UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:   Chapter 11

HardRock HDD, Inc.,   Case No. 17-46425

       Debtor.   Hon. Phillip J. Shefferly

_____/

**OPINION GRANTING APPLICATION FOR ORDER APPROVING
EMPLOYMENT OF ATTORNEYS FOR DEBTOR IN POSSESSION**

**Introduction**

On Monday, May 22, 2017, the Court held a hearing on an application to approve the employment of an attorney for the Chapter 11 debtor in possession. Because the applicant and an objecting party each filed pleadings over the weekend just prior to the hearing, the Court took the matter under advisement at the end of the hearing so that it could review those pleadings. After its review, the Court entered an order on May 25, 2017 granting the application. The Court is now issuing this opinion to explain its reasons.

**Background**

HardRock HDD, Inc. ("HardRock"), Patrick Horizontal Drilling, L.L.C. ("Patrick Horizontal"), and Patrick Leasing, L.L.C. ("Patrick Leasing") are three related companies that own and lease equipment and perform underground drilling and utility work. All three companies are owned by Danny Patrick, Sr. ("Danny") and his son, Jeffery Patrick ("Jeffery"). Each of these companies (hereafter, "Debtors") filed a Chapter 11 petition on April 28, 2017.

On May 16, 2017, Silverman & Morris, P.L.L.C. ("Law Firm") filed an application (collectively, "Applications") in each of the cases requesting an order appointing the Law Firm as attorney for the debtor in possession. The Applications are identical and are supported by an

affidavit of disinterestedness ("Affidavit") pursuant to Fed. R. Bankr. P. 2014 and E.D. Mich. LBR 2014-1, signed by Thomas R. Morris, a principal of the Law Firm. The Affidavit states that beginning in August, 2016, the Law Firm provided legal services to all three Debtors and to their two owners, Danny and Jeffery. The Affidavit also states that the Law Firm appeared on behalf of HardRock and Jeffery in a lawsuit brought against them in federal district court. The Affidavit explains that the Debtors owe the Law Firm approximately $21,000.00 for pre-petition legal services, but that the Law Firm has agreed to waive any claim against the Debtors so that the Law Firm can be appointed to represent them as attorney for the debtor in possession in each of the three cases.

On May 17, 2017, the Law Firm requested the Court to schedule a hearing on the Applications.[1] Because the question of whether an attorney for a debtor in possession should be appointed is one that must be resolved in the very earliest stages of a Chapter 11 case, the Court scheduled the Applications for hearing on the following Monday, May 22, 2017 at 10:30 a.m. On May 18, 2017, a creditor, People's United Equipment Finance Corp. ("People's United") filed an objection. On the following day, the Law Firm filed a memorandum in support of the Applications. Over the weekend, more pleadings were filed. On Saturday, May 20, 2017, the UST filed an objection to the Applications. On Sunday, May 21, 2017, the Law Firm filed an amended declaration ("Amended Declaration") in support of the Applications.

---

[1] In the Eastern District of Michigan, pursuant to E.D. Mich. LBR 2014-1(b), if the United States Trustee ("UST") files a statement of concurrence in an application to approve the employment of a professional, the applicant may submit to the Court a proposed order approving the employment. The rule states that if the UST does not concur in the application within seven days, then the applicant may contact the assigned judge's courtroom deputy clerk and obtain a hearing date on the application. In all three of the Debtors' cases, the Law Firm contacted the courtroom deputy clerk on May 17, 2017 to advise that the UST had not filed a statement of concurrence and to request that the Court schedule a hearing.

On May 22, 2017, the Court held the hearing. In addition to the UST and People's United, another creditor, Old National Bank ("Bank"), appeared at the hearing and objected to the Applications.

The objections by People's United and the Bank are similar to one another. Basically, those creditors argue that the Debtors do not have sufficient revenue to pay the Law Firm, pay other administrative expenses, or fund a plan, and that the Applications should be denied because the Debtors' Chapter 11 cases are futile. The UST's objections do not focus on the viability of the Debtors' cases, but instead go to the Law Firm's eligibility to represent the Debtors in their cases. The UST argues that the Law Firm "has several conflicts of interest, holds and represents materially adverse interests, and is not disinterested."

Even though the Debtors' cases are not presently jointly administered,[2] the Court will address all three of the Applications and the objections to them in this opinion as the issues in each case are identical.

## Jurisdiction

This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(a) and 157(a).

## Legal Standard

Under § 1107(a) of the Bankruptcy Code, a debtor in possession has all of the rights and powers of a trustee serving in a case under Chapter 11, including the right to employ attorneys pursuant to § 327(a) of the Bankruptcy Code, which reads as follows:

---

[2] Shortly after filing, the Debtors filed a motion for joint administration of the three cases. The time to respond to the motion has not yet expired, but these cases look like good candidates for joint administration.

-3-

> Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

To qualify for employment under § 327(a), the attorney must be a disinterested person. That term is defined in § 101(14) of the Bankruptcy Code as any person that:

> (A) is not a creditor, an equity security holder, or an insider;
> (B) is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and
> (C) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.

Under Fed. R. Bankr. P. 2014(a), an order approving the employment of an attorney shall only be made on an application that states the name of the attorney, the necessity for the employment, the reasons for the selection of the attorney, the services to be rendered, the compensation arrangement and, to the best of the applicant's knowledge, all of the applicant's connections with the debtor, creditors and other parties in interest. The rule also requires that the application be accompanied by a verified statement that describes the applicant's connections with the debtor, creditors and other parties in interest.

In the Eastern District of Michigan, LBR 2014-1(a) augments these disclosure requirements by also requiring disclosure of all connections between any associates of the applicant with the debtor, creditors, or any other party in interest, their respective attorneys and accountants.

"The Sixth Circuit has strictly construed the provisions [of § 327(a) and Rule 2014,] and has not hesitated to disqualify professionals who fail to meet the statutory criteria, even though there may be practical reasons for retaining them." In re Seven Counties Services, Inc., No. 13-31442, 2014 WL 69880, at *3 (Bankr. W.D. Ken. Jan. 9, 2014) (citing In re Federated Department Stores,

Inc., 44 F.3d 1310 (6th Cir. 1995); In re Eagle-Picher Industries, 999 F.2d 969 (6th Cir. 1993); and In re Middleton Arms L.P., 934 F.2d 723 (6th Cir. 1991)).

## Discussion

The Court will first consider the UST's objections and then turn to the objections of People's United and the Bank.

The UST asserts that the Law Firm holds and represents interests that are adverse to the Debtors' estates and that the Law Firm is not disinterested. The UST relies on the following facts. First, the Law Firm is a creditor of the Debtors because it holds a pre-petition claim of $21,000.00 for legal services. Second, the Law Firm holds a security interest in all of HardRock's assets granted to the Law Firm on February 15, 2017 to secure payment of the Law Firm's pre-petition claim. Third, the Law Firm received $13,500.00 in payments from HardRock and Patrick Horizontal during the 90 days before they filed their Chapter 11 petitions that may constitute preferential transfers. Fourth, before the Debtors filed their Chapter 11 petitions, the Law Firm represented both the Debtors and the owners of the Debtors, Danny and Jeffery. Fifth, even after the Debtors filed their Chapter 11 petitions, the Law Firm still remains counsel of record for Jeffery in a lawsuit pending in federal district court.

The Law Firm concedes that its pre-petition claim against the Debtors is an interest adverse to the Debtors' estates under § 327(a) and that this pre-petition claim makes the Law Firm a creditor, and thus not disinterested under § 101(14). However, the Law Firm expressly states both in paragraph 7 of the Affidavit and in paragraph 10 of the Amended Declaration that it agrees to waive its pre-petition claim against the Debtors. With that waiver, the Law Firm will no longer hold an interest adverse to the Debtors' estates nor will it be a creditor of the Debtors. Further, paragraph 11 of the Amended Declaration contains an acknowledgment by the Law Firm that the waiver of the

-5-

Law Firm's pre-petition claim will also extinguish the Law Firm's security interest in HardRock's assets. Without a pre-petition claim and security interest, the Law Firm argues that it does not hold an interest adverse to the Debtors' estates, nor is it a creditor of the Debtors' estates.

The Court agrees with the Law Firm. It is not uncommon for an attorney selected by a debtor in possession to have also represented the debtor pre-petition. It is also not uncommon for there to be an unpaid balance of fees owing by the debtor to that attorney. If the attorney continues to hold a claim against the debtor for the unpaid fees, the attorney holds an interest adverse to the debtor's estate and is not disinterested. But if the attorney agrees to waive the claim, this impediment is removed: the attorney no longer holds an adverse interest and is no longer a creditor. The Law Firm's express agreement to waive its pre-petition claim and security interest solves this problem.

Even with the Law Firm's express waiver of its pre-petition claim, the UST asserts that the Law Firm still holds an interest adverse to the Debtors' estates, and is not disinterested, because the $13,500.00 received by the Law Firm from the Debtors in the 90 days before bankruptcy may constitute preferential transfers that may one day have to be repaid to the Debtors' estates. According to the UST, any request by the Debtors for the repayment of these potentially preferential transfers necessarily places the Law Firm in direct conflict with the interests of the Debtors' estates.

Although there is no controlling precedent in the Sixth Circuit regarding the issue of whether a possible preferential transfer is enough to disqualify an attorney under § 327(a), there is case law in other circuits. The UST cites In re Pillowtex, Inc., 304 F.3d 246 (3d Cir. 2002), for the proposition that the existence of a potential preference must be resolved before an attorney's application for approval of employment could be approved.

-6-

17-46425-pjs    Doc 63    Filed 05/25/17    Entered 05/26/17 07:11:48    Page 6 of 13

In Pillowtex, the debtor in possession sought to employ the Jones Day law firm to represent it as debtor in possession. Jones Day had represented Pillowtex in a variety of matters before Pillowtex filed its Chapter 11 petition. Pillowtex paid Jones Day over $2.5 million pre-petition, of which approximately $1 million was paid in the 90 days before the Chapter 11 petition was filed, including a payment of $300,000.00 the day before the petition was filed. The UST objected to the application to employ Jones Day, on the ground that Jones Day had received voidable preferential transfers from Pillowtex under § 547 of the Bankruptcy Code and, therefore, held an interest adverse to the debtor's estate and was not disinterested. Jones Day argued in response that the payments it received were substantially within the historical pattern of payments between Pillowtex and Jones Day and proposed that, if a preference action was filed against Jones Day and it was determined that Jones Day had received a preference, Jones Day would agree to repay the debtor's estate the full amount of the preference and waive any related claim. The bankruptcy court approved the application to employ Jones Day. Id. at 248-49.

The Third Circuit Court of Appeals reversed, holding that Jones Day's agreement to repay any amount ultimately found to be preferential did not resolve the question of whether Jones Day was disinterested at the time of the debtor's application to employ Jones Day. Noting that "there has never been a judicial determination whether Jones Days received a preference," the court found that it was unclear from the record whether Jones Day should be disqualified from representing the debtor. Id. at 255. The court remanded the case back to the district court to determine whether Jones Day had received a preferential transfer from Pillowtex. In doing so, the court held as follows:

> We hold that when there has been a facially plausible claim of a substantial preference, the district court and/or the bankruptcy court cannot avoid the clear mandate of the statute by the mere expedient of approving retention conditional on a later determination of the preference issue.

Id.

The Law Firm argues that a bankruptcy court is not required to conduct a full blown trial to adjudicate whether an attorney received a pre-petition preferential transfer before deciding whether that attorney is eligible to be appointed under § 327(a). But even allowing that the Court must conduct some inquiry before deciding the Applications, the Law Firm argues that the facts in this case do not support a finding that there is a facially plausible preference claim against it. In support, the Law Firm points to paragraph 14 of the Amended Declaration, where the Law Firm admits that it received payments totaling $13,500.00 from the Debtors during the 90 days before the Chapter 11 cases, but asserts that it has two valid defenses to any possible claim for a preferential transfer. First, it provided subsequent new value consisting of services and expenses totaling $15,063.59 after the payments were made to it. Second, any payments made to it were substantially contemporaneous transfers for new value.

Although the UST does not provide the Court with any facts to refute the Law Firm's statements in the Amended Declaration, the UST points out that there were three separate drafts of pre-petition retainer agreements between the Debtors and the Law Firm, none of which were signed. As a result, the UST argues that it is difficult to tell whether there were preferential transfers to the Law Firm because it is not clear under which of these unsigned retention agreements the Debtors' payments were made. The Law Firm concedes that there are three separate drafts of unsigned retention agreements but argues that this fact is irrelevant. According to the Law Firm, what is relevant is that the payments to the Law Firm were contemporaneous exchanges for current services and reimbursement of costs, and that the Law Firm continued to provide the Debtors with subsequent new value after the Debtors made those payments.

The Court agrees with the holding of Pillowtex that when there is a facially plausible claim of a substantial preference, the Court cannot approve an application of employment conditioned on

some later determination of the preference issue. But the facts in the record before the Court do not demonstrate the existence of a facially plausible claim of a substantial preference.

The Amended Declaration states that the Law Firm performed pre-petition services having a value greater than the amount of the payments it received during the 90 days before the Chapter 11 petitions were filed. The Amended Declaration is a verified statement containing facts that tend to support one or more defenses to any claim of preferential transfer. The UST does not attempt to refute those facts nor does it identify any other facts to refute the Law Firm's contention that it has a complete defense based on subsequent new value or substantially contemporaneous exchange defenses. The only fact identified at all by the UST other than the fact of the payments themselves, is that there were no signed retention agreements between the Debtors and the Law Firm during the pre-petition period in which the Law Firm rendered services to the Debtors. However, that fact is not probative one way or the other as to whether there is a facially plausible claim of a preferential transfer.

In contrast to Pillowtex, there is no facially plausible preference claim against the Law Firm. Just because payments were made during the 90 days before bankruptcy does not mean that there is a facially plausible claim to recover those payments. There must be a showing of more facts to make a facially plausible claim. Perhaps there are other facts that could be marshaled to support a preference claim against the Law Firm, but none have been brought to the Court's attention nor has any party asked for the opportunity to take discovery or conduct any further proceedings to uncover any more facts. The only facts before the Court are those contained in the Affidavit and the

-9-

17-46425-pjs    Doc 63    Filed 05/25/17    Entered 05/26/17 07:11:48    Page 9 of 13

Amended Declaration, and they are not enough for the Court to find a facially plausible preference claim.[3]

Even if the Court were to find that there is a facially plausible claim of a preference, it is not one that is substantial. The total payments made to the Law Firm are $13,500.00. The Chapter 11 petitions of the Debtors in the aggregate show assets of $2,735,648.00 and debts of $5,937,348.00. In this context, $13,500.00 is not a substantial amount. Section 101(14)(C) requires that a disinterested person must not have "an interest materially adverse to the interest of the estate." For the same reason that the Court does not consider the amount of the alleged preferential transfers to be substantial in the sense that the Pillowtex opinion used that term, it does not consider the Law Firm's interest in the receipt of these payments to be material.

In sum, the Court agrees with the legal standards set forth in Pillowtex, but does not find that these cases demonstrate the existence of a facially plausible claim of a substantial preference to the Law Firm. The UST's allegations regarding preferential payments by the Debtors to the Law Firm does not preclude the Law Firm's employment under § 327(a).

The UST next argues that the Law Firm's pre-petition representation of Danny and Jeffery makes the Law Firm ineligible under § 327(a) to represent the Debtors. The UST also argues that the Law Firm's prior representation of Danny presents a conflict because Danny may have guaranteed payment of the Debtors' pre-petition legal fees to the Law Firm.

Section 327(a) focuses on whether the attorney whose employment is sought presently holds or represents an interest adverse to the estate. Likewise, § 101(14)'s disinterestedness test focuses on whether the attorney sought to be employed is presently a creditor or presently holds an interest

---

[3] That does not mean that the Debtors — or, more precisely, the Debtors' creditors — are precluded from ever bringing a preference claim against the Law Firm, but only that there is no facially plausible claim in the record before the Court regarding the Applications.

-10-

materially adverse to the estate. The analysis of the UST's argument differs when applied to Danny and Jeffery.

The Law Firm states that it no longer represents Danny at all. There are no contrary facts in the record. The fact that the Law Firm previously represented Danny prior to the Debtors' Chapter 11 petitions is not remarkable, since it is common in the Court's experience for both closely held business entities and their owners to use the same attorney. It is also not uncommon for a principal of a closely held business to guaranty payment of certain debts of that business. But the mere fact of pre-petition representation of a principal of the business does not make the Law Firm ineligible under § 327(a) so long as the representation of the principal terminated on the date of the bankruptcy petition.

As to Jeffery, the Law Firm admits that it represented Jeffery as a defendant in a lawsuit brought in federal district court. The Affidavit and the Amended Declaration both state that Jeffery has discharged the Law Firm as his attorney in that lawsuit, that the Law Firm has filed a motion to withdraw from further representation of Jeffery in that lawsuit, that opposing counsel has consented to the withdrawal, and that the only delay in completion of the withdrawal is that the federal district court has scheduled a hearing on the Law Firm's motion for May 30, 2017. The Affidavit and the Amended Declaration both state that the Law Firm fully expects the motion to be granted at that time. There are no contrary facts in the record.

Without having more knowledge of the matters at issue in the federal district court lawsuit, it is conceivable to the Court that there could be a potential conflict of interest in the continuing representation of Jeffery in that lawsuit. However, because it is undisputed that Jeffery has discharged the Law Firm, the Law Firm's motion to withdraw has been consented to by the other party in that lawsuit, and there is a hearing scheduled on May 30, 2017 on the motion, it seems likely

to the Court that any further representation will be officially terminated on May 30, 2017, a matter of a few days. The Court cannot find from the record that the fact of the Law Firm's appearance on behalf of Jeffery constitutes either the holding or representing of a materially adverse interest that would disqualify the Law Firm under § 327(a).

The UST has raised a number of legitimate questions regarding the Applications. After all, there are multiple Debtors whose cases have not yet been jointly administered; the Debtors and their owners were all represented by the Law Firm pre-petition; the Law Firm was paid $13,500.00 in the 90 days prior to the Debtors' Chapter 11 petitions; there were no written fee agreements executed between the Debtors and the Law Firm pre-petition; and the Law Firm continues to remain as counsel of record for one of the owners, Jeffery, in a lawsuit pending in federal district court, albeit with a pending unopposed motion to withdraw. These facts and the questions raised by them explain why the UST would not sign an order approving the Applications. The UST has a legitimate interest, indeed duty, to ensure that any applications for employment of an attorney in a Chapter 11 case pass muster under § 327(a) and § 101(14). However, having now reviewed the Affidavit and the Amended Declaration, and the facts that the Law Firm has identified in response to the UST's objections, the Court finds that the Law Firm is eligible to represent the Debtors and that the UST's objections must be overruled.

That leaves the objections of People's United and the Bank. Both of these entities are creditors. They both have understandable concerns about the viability of the Debtors' Chapter 11 cases. However, the arguments that they made both in writing and at the hearing do not address the Law Firm's eligibility to represent the Debtors. Instead, they really focus on whether these creditors may be entitled to some other form of relief in these Chapter 11 cases, such as relief from the automatic stay, dismissal or conversion. The Court takes the concerns of these creditors seriously.

-12-

17-46425-pjs    Doc 63    Filed 05/25/17    Entered 05/26/17 07:11:48    Page 12 of 13

But they do not provide the Court with a basis to deny the Applications. Even if the potential success of a Chapter 11 case is dubious, a Chapter 11 debtor in possession has the right to select its own attorney subject to the qualifications in § 327(a) and to the Court's approval. The Court finds that the Law Firm is eligible to be employed by the Debtors under § 327(a), and that is why the Court has entered orders granting the Applications.

The Court will docket a copy of this opinion in each of the Debtors' cases.

.

**Signed on May 25, 2017**

                                        **/s/ Phillip J. Shefferly**
                                        **Phillip J. Shefferly**
                                        **United States Bankruptcy Judge**