UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

HardRock HDD, Inc., *et al.*,[1]

          Debtors.
_____/

Chapter 11
Case No. 17-46425
Jointly Administered
Hon. Phillip J. Shefferly

**O<small>PINION</small> G<small>RANTING</small> I<small>N</small> P<small>ART</small> M<small>OTION</small> F<small>OR</small> R<small>ELIEF</small> F<small>ROM</small>**
**T<small>HE</small> A<small>UTOMATIC</small> S<small>TAY</small> A<small>ND</small>/<small>OR</small> F<small>OR</small> A<small>DEQUATE</small> P<small>ROTECTION</small>**

**Introduction**

Three related companies filed Chapter 11 cases. A creditor filed a motion for relief from the automatic stay in two of the cases to recover equipment that secures a debt owed to it. Because the motion raises issues of fact, the Court scheduled an evidentiary hearing. Based on the record made at the evidentiary hearing, and for the reasons explained in this opinion, the Court will grant the motion in part by lifting the automatic stay as to some of the equipment and leaving the automatic stay in place as to the other equipment, conditioned on adequate protection payments.

**Jurisdiction**

This is a core proceeding under 28 U.S.C. § 157(b)(2)(G), over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(a) and 157(a).

---

[1] The Debtors in these jointly administered cases are: HardRock HDD, Inc. (case no. 17-46425); Patrick Leasing, L.L.C. (case no. 17-46440); and Patrick Horizontal Drilling, L.L.C. (case no. 17-46446).

## Procedural History

HardRock HDD, Inc. ("HardRock"), Patrick Horizontal Drilling, L.L.C. ("Patrick Horizontal"), and Patrick Leasing, L.L.C. ("Patrick Leasing") (collectively, "Debtors") are three related companies involved in underground drilling and utility construction. On April 28, 2017, the Debtors each filed a Chapter 11 petition. The three cases are jointly administered.

On May 10, 2017, People's United Equipment Finance Corp. ("People's United") filed a Motion for Relief From the Automatic Stay and/or Adequate Protection ("Motion") (ECF No. 10). The Motion alleges that People's United holds a secured claim against two of the Debtors, HardRock and Patrick Leasing. The Motion requests the Court to lift the automatic stay so that People's United may enforce its security interest in certain equipment owned by HardRock and Patrick Leasing. In the alternative, the Motion requests that if the Court does not lift the automatic stay, the Court order HardRock and Patrick Leasing to provide People's United with adequate protection for its interest in the equipment.

HardRock and Patrick Leasing filed a response to the Motion. People's United filed a reply.

On June 7, 2017, the Court held a hearing on the Motion. The Court found that there were factual issues that required an evidentiary hearing. On June 21, 2017, the Court held the evidentiary hearing.

People's United called one witness, Joseph Cannici ("Cannici"), a vice president and manager of People's United. Cannici is very knowledgeable about the financing of equipment, having handled thousands of transactions for People's United during the many years that he has worked for it. Cannici testified about the HardRock and Patrick Leasing account with People's United. Cannici testified credibly. People's United also introduced into evidence exhibits 1-10.

HardRock and Patrick Leasing called one witness, Jeffery Patrick ("Jeffery"), one of the founders and a 50% owner of each of the Debtors. Jeffery testified about the Debtors' pre- and post-petition business operations. Jeffery testified credibly. HardRock and Patrick Leasing introduced into evidence exhibits A-D, F, and G.

### Findings of Fact

The Court makes the following findings of fact from the evidence adduced at the evidentiary hearing.

Jeffery and his father have operated the Debtors for approximately 20 years. Although Jeffery and his father view the three Debtors as basically one enterprise, they are legally separate business entities. HardRock is a corporation while the other two Debtors are limited liability companies. HardRock was originally formed as an operating company doing drilling and utility construction, Patrick Leasing was originally formed as an equipment leasing company, and Patrick Horizontal was originally formed as a real estate holding company. The three companies have historically generated combined annual revenues of $2.5 million. Over time, the functions of the three companies have been blurred, and it is not uncommon for them to make payments to or for each other.

The Debtors were forced to file Chapter 11 because they ran out of cash due to the failure of one of HardRock's customers to pay HardRock on a very large job.

Prior to the bankruptcy petitions, People's United, an equipment financing company, made two loans to HardRock and Patrick Leasing, one on February 3, 2016 for $148,944.00, and one on October 31, 2016 for $213,936.00, both of which are secured by a first priority security interest in the following equipment ("Equipment"):

> International Chassis with attached Vactor Hydro Excavator ("Vactor");
> MAC Smooth Side Dump Trailer ("Trailer");
> MAC Half Round Dump Trailer ("Trailer"); and
> Freightliner Tractor Truck ("Freightliner").

HardRock and Patrick Leasing defaulted on those loans pre-petition because of missed monthly payments. People's United was owed a total of $311,582.50 as of the petition date.

HardRock owns the Vactor and Patrick Leasing owns the rest of the Equipment. The Debtors also own other equipment and Patrick Horizontal owns the real property where the Debtors are located. The Vactor is in need of repairs and has been in a repair shop since November, 2016, but the Debtors are "anticipating" using the Vactor for a new job to begin next week. The Trailers and the Freightliner are not presently being used, but the Debtors have a job beginning next week that will require the use of the Freightliner and the Trailers.

The Debtors have some post-petition business operations, but most of it is done by Patrick Horizontal – which is not one of the Debtors that borrowed money from People's United and does not own any of the Equipment. The two Debtors that own the Equipment and are the subject of the Motion have conducted little post-petition business. HardRock's post-petition business consists of two items of income totaling $15,600.00, shown on HardRock's profit and loss statement (exhibit A) for the period of April 29, 2017 through June 20, 2017. Patrick Leasing has not conducted any post-petition business and its post-petition profit and loss statement (exhibit C) for the same period shows no income. The profit and loss statement (exhibit B) for Patrick Horizontal for the same period shows income of $84,550.00. Altogether, the three Debtors have a combined positive net income post-petition, but the two Debtors that owe People's United, HardRock and Patrick Leasing, both show a negative net income post-petition.

Going forward, Jeffery testified very generally that the "Debtors are bidding on new work that will increase the Debtors' revenue and profitability." More specifically, Jeffery identified two projects. First, Patrick Horizontal is working on a Flint water services reconstruction lead abatement program, which "will go on for years." Jeffery testified that he signed a written contract for Patrick Horizontal to do the Flint water services work, but he did not have a copy of it available at the hearing. The reason the Flint water services construction work is not being performed by HardRock – historically the Debtors' operating company – but is instead being performed by Patrick Horizontal – historically the Debtors' real estate holding company – is because HardRock is not a union approved company. Patrick Horizontal is a union approved company, and the Flint work must be performed by a union company. To do the work on this contract, Patrick Horizontal is using equipment owned by HardRock and Patrick Leasing. Second, Patrick Horizontal is "picking up" work from Miller Pipeline in Grand Rapids, Detroit and other locations, although the evidence is silent as to whether there is a contract or an estimate of the amount of this work.

HardRock has one other source of income going forward. On June 20, 2017, one day before the evidentiary hearing, HardRock signed an Equipment Rental Agreement (exhibit D) ("Miller Agreement") with Miller Pipeline. The Miller Agreement calls for HardRock to lease the Vactor to Miller Pipeline, a pipeline company located in Indiana but working in Michigan, for $11,500.00 per month, with the first month's rent to be paid to a repair shop to complete the cost of repairs on the Vactor. HardRock signed the Miller Agreement even though the Security Agreement (exhibit 3) that HardRock signed with People's United expressly states in paragraph 2(g) that HardRock shall not "rent, lease, lend, destroy or otherwise transfer or dispose of" the Equipment "without the prior written consent" of People's United. Although HardRock did not obtain People's

-5-

17-46425-pjs    Doc 83    Filed 06/26/17    Entered 06/26/17 16:35:06    Page 5 of 13

United's consent before signing the Miller Agreement, HardRock is "comfortable" that Miller Pipeline will make payments on the Miller Agreement because Jeffery, in addition to his positions with the Debtors, is also the general manager of Miller Pipeline, and he "knows" that Miller Pipeline "has the depth of resources to make the payments."

The total value of the Equipment is approximately $295,000.00. That value is based on the testimony of both Jeffery and Cannici. Jeffery testified that he believes the total value of the Equipment to be approximately $295,000.00, consisting of $200,000.00 for the Vactor, $30,000.00 each for the Trailers, and $35,000.00 for the Freightliner. Cannici basically agreed with Jeffery's estimates of value.

The evidence on the useful life of the Equipment is conflicting. Jeffery estimated the remaining useful life of the Vactor to be between 10 to 15 years, and the remaining useful life for the rest of the Equipment to be approximately 15 years. Cannici estimated the remaining useful life of the Vactor to be approximately 4 to 5 years, and the remaining useful life of the rest of the Equipment to be about 3 years. Although both witnesses appear knowledgeable about the Equipment, neither witness provided any detail to support their respective opinions. Based on Cannici's much more extensive work financing this type of equipment, the Court gives greater weight to Cannici's testimony, and finds that the useful life of the Equipment approximates five years.

## Discussion

The Motion states that it seeks relief from the automatic stay under § 362(d)(1) of the Bankruptcy Code, and adequate protection under § 361 of the Bankruptcy Code. However, after HardRock and Patrick Leasing filed their response, People's United filed a reply that cites

§ 362(d)(2) of the Bankruptcy Code. Further, at the evidentiary hearing, both sides adduced evidence regarding the elements of § 362(d)(2), and made legal arguments regarding § 362(d)(2) as well as § 362(d)(1). Therefore, the Court construes the Motion as seeking relief under both § 362(d)(1) and (2), as well as adequate protection under § 361.

Section § 362(g) of the Bankruptcy Code allocates the burden of proof for any hearing concerning relief from the stay under § 362(d):

> (1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and
>
> (2) the party opposing such relief has the burden of proof on all other issues.

The Court will first consider the Motion under § 362(d)(2).

### Section 362(d)(2)

Section 362(d)(2) requires the Court to grant relief from the automatic stay by terminating, annulling, modifying, or conditioning the stay

> (2) with respect to a stay of an act against property under subsection (a) of this section, if—
>     (A) the debtor does not have an equity in such property; and
>     (B) such property is not necessary to an effective reorganization[.]

"'Equity' is the value, above all secured claims against the property, that can be realized from the sale of the property for the benefit of the unsecured creditors." Stephens Industries, Inc. v. McClung, 789 F.2d 386, 392 (6th Cir. 1986). To be "necessary to an effective reorganization," the property must be "essential for an effective reorganization *that is in prospect.* This means ... that there must be a reasonable possibility of a successful reorganization within a reasonable time." United Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd., 484 U.S. 365, 375-76 (1988).

-7-

The evidence establishes, and HardRock and Patrick Leasing concede, that they do not have any equity in the Equipment. That's the first element of § 362(d)(2). However, HardRock and Patrick Leasing argue that the second element of § 362(d)(2) is not present because the evidence establishes that the Equipment is necessary for their reorganization. In support, HardRock and Patrick Leasing rely heavily on the Flint water services work being performed by Patrick Horizontal.

In making this argument, HardRock and Patrick Leasing overlook the fact that the Debtors are separate entities. They are not substantively consolidated. HardRock and Patrick Leasing do not cite any authority for the proposition that when evaluating whether those two Debtors have a reorganization in prospect, the Court should also consider the business operations of another debtor, especially one that has no obligation to pay the creditor who is moving for stay relief and who has no interest in the property that the creditor seeks to recover if the stay is lifted.

As for the two Debtors that do own the Equipment and that do owe the money to People's United – HardRock and Patrick Leasing – their profit and loss statements show that those two Debtors currently transact very little business. The only specific revenue source that either HardRock or Patrick Leasing can identify as their own is HardRock's rental income under the Miller Agreement.

But today is not the confirmation hearing. To prevail under § 362(d)(2), HardRock and Patrick Leasing need not prove that they presently have a feasible, confirmable plan of reorganization. They need only prove that there is a reorganization in prospect. They have met that burden. Jeffery provided uncontroverted testimony about HardRock's existing work, HardRock's bidding on new work, and HardRock's rental revenue from Miller Pipeline. In addition, Jeffery testified without contradiction that all of the Equipment, some of which is owned by HardRock, and

some of which is owned by Patrick Leasing, is necessary for the continued business operations of both HardRock and Patrick Leasing. At this early stage of these Chapter 11 cases, that is enough to show that HardRock and Patrick Leasing have a reorganization that is in prospect. Therefore, the Court will not lift the stay under § 362(d)(2).

The Court will next consider the Motion under § 362(d)(1).

### Section 362(d)(1)

Section 362(d)(1) requires the Court to grant relief from the automatic stay by terminating, annulling, modifying, or conditioning the stay—

> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest[.]

"Cause" under § 362(d)(1) is not defined by the Bankruptcy Code. Courts determine whether or not there is cause "on a case by case basis." Laguna Associates L.P. v. Aetna Casualty & Surety Co. (In re Laguna Associates L.P.), 30 F.3d 734, 737 (6th Cir. 1994).

The evidence establishes that HardRock and Patrick Leasing are in default of their pre-petition and post-petition payments to People's United. By themselves, those facts are not sufficient to demonstrate cause for relief from the automatic stay. But People's United points to other facts in the record to demonstrate cause for relief. The Vactor has been in the repair shop for six months and has not been used by HardRock and Patrick Leasing during this time. Suddenly, one day before the evidentiary hearing, HardRock signs the Miller Agreement to rent the Vactor to Miller Pipeline for $11,500.00 per month. There is little evidence in the record about Miller Pipeline, and none to show its financial condition. Jeffery testified that Miller Pipeline is a subsidiary of a publicly held company, and that he is its general manager. Of more importance to People's United is Jeffery's admission that he knew that People's United's Security Agreement

-9-

expressly prohibits HardRock from renting the Vactor to any third party, yet he signed the Miller Agreement anyway. Adding insult to injury, Jeffery had HardRock rent the Vactor to a non-debtor company that he manages.

In response, HardRock acknowledges that it could not rent out the Vactor to a third party absent the bankruptcy case, but argues that filing bankruptcy gives it license to now do so. HardRock's argument rests on § 363(b) of the Bankruptcy Code. According to HardRock, it is in the business of renting out equipment and, therefore, § 363(b) permits it to rent the Vactor in the ordinary course of that business. There are two major problems with this argument.

First, the record does not support a finding that HardRock is in the business of renting out equipment. Jeffery's conclusory statement that HardRock has rented out equipment in the past by itself does not prove that HardRock is in the business of renting out equipment. If anything, the record taken as a whole supports a finding that it is Patrick Leasing, and not HardRock, that is in the business of renting out equipment. Jeffery's uncontroverted testimony shows that HardRock is the operating company – not the leasing company – in the Debtors' combined business enterprise. On this record, a decision by HardRock to rent out the Vactor is outside of the ordinary course of its business and would require a motion to seek bankruptcy court approval under § 363(c) of the Bankruptcy Code.

Second, even if HardRock were in the business of renting out equipment, the Court cannot find that the ordinary course of its business is to rent out equipment in knowing violation of its contracts with others. Here, HardRock admits that it is renting out the Vactor in direct breach of the covenant in paragraph 2(g) of the Security Agreement that expressly prohibits it from doing so. Renting out equipment as an ordinary course of business is one thing, renting out equipment in

-10-

17-46425-pjs    Doc 83    Filed 06/26/17    Entered 06/26/17 16:35:06    Page 10 of 13

knowing violation of express contractual covenants is another. The evidence does not prove that HardRock is in the business of renting out equipment in knowing breach of contracts. Even if it did, a business whose ordinary course is to knowingly breach contracts with others is not the type of ordinary course of business that § 363(b) condones.

Regardless of whether HardRock is in the business of renting out equipment, and regardless of whether § 363(b) or (c) would apply to HardRock's renting out the Vactor under the Miller Agreement, the fact that HardRock signed the Miller Agreement in knowing violation of the Security Agreement with People's United provides enough cause for the Court to grant the Motion to permit People's United to recover the Vactor.

While the record supports a finding that there is cause to grant relief from the automatic stay to permit People's United to recover the Vactor, the evidence does not establish cause to lift the automatic stay for People's United with respect to the remaining Equipment. Neither HardRock nor Patrick Leasing are renting out the Trailers or the Freightliner in violation of the Security Agreement. The evidence shows that they are intending to use those items of Equipment in the continued operation of their business as they attempt to reorganize in Chapter 11. Therefore, the Court will lift the automatic stay under § 362(d)(1) to permit People's United to recover the Vactor, but not lift the automatic stay to permit People's United to recover the Trailers and the Freightliner.

The Court will next consider the Motion's request for adequate protection under § 361.

Section 361

Section 361 of the Bankruptcy Code is titled "adequate protection," and provides that when adequate protection is required under § 362 of an interest of an entity in property, such adequate protection may be provided by—

-11-

> (1) requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under section 362 of this title, use, sale or lease under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in the value of such entity's interest in such property;
>
> (2) providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property; or
>
> (3) granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

"The principle of adequate protection reconciles the competing interests of the debtor, who needs time to reorganize free from harassing creditors, and the secured creditor, on the other hand, who is entitled to constitutional protection for its bargained-for property interest." In re Planned Systems, Inc., 78 B.R. 852, 861 (Bankr. S.D. Ohio 1987). "[I]f the secured property is declining in value or if there is an impairment of the secured creditor's interest, then the creditor is entitled to adequate protection." In re Poissant, 405 B.R. 267, 272 (Bankr. N.D. Ohio 2009) (citing United Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd., 484 U.S. 365, 370 (1988)).

The record shows that HardRock and Patrick Leasing intend to use the Trailers and Freightliner going forward, and that they have insurance for them. That protects People's United from loss or destruction of the Equipment. But there is no specific evidence in the record to show the amount by which the Trailers and the Freightliner will diminish in value as HardRock and Patrick Leasing use them in their business going forward. The only evidence in the record relevant to this issue consists of the competing testimony of Jeffery and Cannici regarding the useful life of the Equipment. As noted earlier, the Court credits Cannici's testimony more than Jeffery's, and

-12-

finds that the Trailers and the Freightliner have a useful life of five years. The Trailer and the Freightliner have a value of $95,000.00. Amortizing that amount over five years requires monthly payments of $1,583.00.[2] The Court finds that a monthly cash payment in that amount is warranted under § 361(1) to provide People's United with adequate protection of its interest in the Trailers and the Freightliner.

The Court will enter a separate order granting the Motion in part, consistent with this opinion.

.

**Signed on June 26, 2017**

                                          **/s/ Phillip J. Shefferly**
                                          **Phillip J. Shefferly**
                                          **United States Bankruptcy Judge**

---

[2] Because the record shows that People's United is undersecured, it is not entitled to collect post-petition interest under § 506(b) of the Bankruptcy Code.