UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

HardRock HDD, Inc., *et al.*,[1]

    Debtors.

_____/

Chapter 11
Case No. 17-46425
Jointly Administered
Hon. Phillip J. Shefferly

### OPINION AND ORDER DENYING DEBTOR'S MOTION FOR RECONSIDERATION

### Introduction

On June 26, 2017, the Court issued an Opinion Granting in Part Motion for Relief from the Automatic Stay and/or for Adequate Protection ("Opinion") (ECF No. 83). Later the same day, pursuant to the Opinion, the Court entered an Order Granting in Part Motion for Relief from the Automatic Stay and/or for Adequate Protection ("Order") (ECF No. 84). The Order lifted the automatic stay of § 362 of the Bankruptcy Code to permit a secured creditor, People's United Equipment Finance Corp. ("People's United"), to enforce its security interest in an item of equipment owned by one of the Debtors in these jointly administered cases. The equipment is an excavator known as an International Chassis with attached Vactor Hydro Excavator ("Vactor"). The Order did not lift the automatic stay to permit People's United to enforce its security interest in any other equipment owned by the Debtors, but did require two of the Debtors to make adequate protection payments on the other equipment.

---

[1] The Debtors in these jointly administered cases are: HardRock HDD, Inc. (case no. 17-46425); Patrick Leasing, L.L.C. (case no. 17-46440); and Patrick Horizontal Drilling, L.L.C. (case no. 17-46446).

On June 27, 2017, one of the Debtors, HardRock HDD, Inc. ("HardRock"), filed a motion for reconsideration ("Motion") (ECF No. 85). The Motion seeks reconsideration of that part of the Order that lifts the automatic stay regarding the Vactor, but does not address the other relief granted by the Order.

**Discussion**

Motions for reconsideration are governed by E.D. Mich. LBR 9024-1. Subpart (a)(3) of that rule provides that the moving party must demonstrate a palpable defect by which the Court and the parties have been misled, and also show that a different disposition of the case must result from the correction of that defect. The Motion alleges that the Opinion and Order contain multiple palpable defects. The Court will address them in the sequence that they appear in the Motion and the brief in support of the Motion.

First, the Motion notes that the Opinion and Order found cause to lift the automatic stay with respect to the Vactor based on a clause in a security agreement made by HardRock with People's United that prohibited HardRock from renting the Vactor to a third party without first obtaining the written consent of People's United. According to HardRock, the significance of this clause was raised for the first time by People's United in its reply brief and HardRock was not permitted to respond in writing.

It is true that People's United's initial motion for relief from the automatic stay, filed on May 10, 2017, did not raise this issue. The issue first surfaced in the response that HardRock filed to the motion on May 25, 2017. In that response, HardRock stated that it had received "proposals" for equipment rental and that it had "implemented" equipment rentals. In its reply to those assertions filed on June 2, 2017, People's United stated that its security agreement expressly

-2-

prohibits HardRock from renting any of its collateral. Until HardRock raised the possibility of renting out the Vactor, People's United had no reason to cite the clause in its security agreement.

The security agreement clause was then addressed at the hearing on June 7, 2017. But the issue took on much greater importance when HardRock produced for the first time at the evidentiary hearing on June 21, 2017, a rental agreement signed one day earlier, June 20, 2017, in which HardRock agreed to rent the Vactor to Miller Pipeline. People's United argued at the hearing that the rental agreement violated its security agreement. People's United could not possibly have raised that objection any earlier since it saw the Miller Pipeline rental agreement for the very first time at the hearing on June 21, 2017. That HardRock did not file a brief addressing how the clause in the security agreement affected the Miller Pipeline rental agreement is due solely to the fact that HardRock first produced the agreement at the June 21, 2017 hearing. In any event, at no time during the hearing did HardRock request permission to file a brief on this issue. The Motion's allegation that HardRock "was not permitted to respond in writing to the reply brief" is not true and does not demonstrate a palpable defect.

Second, the Motion argues that the clause in People's United's security agreement that expressly prohibits HardRock from renting out the Vactor is ineffective because of § 541(c)(1) of the Bankruptcy Code. Section 541 determines what makes up property of a bankruptcy estate. Section 541(c)(1) provides that an interest of a debtor in property still becomes property of the bankruptcy estate notwithstanding any provision in an agreement or applicable nonbankruptcy law that restricts or conditions the transfer of such interest by the debtor. No argument here. The Court agrees with HardRock that the Vactor is property of its bankruptcy estate. Nothing in the Opinion and Order says otherwise. But that does not mean that a debtor may act in derogation of all of the

-3-

17-46425-pjs    Doc 86    Filed 06/29/17    Entered 06/29/17 15:05:40    Page 3 of 10

covenants contained in a pre-petition security agreement.  The issue is not whether the Vactor is property of the estate – it is.  Rather, the issue is whether HardRock's decision to rent out the Vactor to a nondebtor third party who is not subject to bankruptcy court jurisdiction, without obtaining the prior consent of People's United, in the circumstances of this case, constitutes cause for relief from the automatic stay.  The Opinion and Order found that this conduct constitutes cause.  Nothing in HardRock's citation to § 541(c)(1) demonstrates a palpable defect in that finding.

Third, the Motion argues that even if HardRock agreed to a pre-petition covenant not to rent out the Vactor, it is no longer bound by that covenant because a debtor is a "new entity" once it files Chapter 11.  HardRock cites Indian Harbor Insurance Co. v. Zucker, __ F.3d __, 2017 WL 2641085 (6th Cir. June 20, 2017), a recent Sixth Circuit decision.  The issue in that case was whether a liquidating trustee appointed pursuant to a confirmed Chapter 11 plan of reorganization is the same entity as the debtor.  That case is factually distinguishable from HardRock's case, and the legal issue in that case had nothing to do with cause to grant relief from the automatic stay of § 362(a).  Nonetheless, the principles stated by the Sixth Circuit Court of Appeals in that case, and its citation to Supreme Court precedent, do not support HardRock's contention that once it filed Chapter 11 it is a "new entity" that may wholly disregard its pre-petition contracts.  "The Supreme Court rejected the argument that a debtor in possession is a 'wholly new entity' unbound by their pre-bankruptcy company's contracts."  Indian Harbor Insurance Co., 2017 WL 2641085, at *3 (citing NLRB v. Bildisco & Bildisco, 465 U.S. 513, 528 (1984)).  The Sixth Circuit went on to explain that the Supreme Court in Bildisco "thought it 'sensible to view the debtor-in-possession as the same "entity'' which existed before the filing of the bankruptcy petition.'"  Id. (quoting Bildisco & Bildisco, 465 U.S. at 528).  The fact that a bankruptcy estate was created when

HardRock filed Chapter 11 does not make HardRock a "new entity" with license to disregard all pre-bankruptcy contracts that it has made.

Fourth, the Motion argues that § 363 of the Bankruptcy Code empowers a debtor in possession to use, sell or lease property of the estate "without regard to assignment restrictions contained in a prepetition agreement." In support, the Motion cites In re Sparks, No. 03-38563L, 2005 WL 1669609 (Bankr. W.D. Tenn. July 14, 2005). Sparks involved a motion brought by a Chapter 7 trustee seeking authority to assign a stream of payments under a structured settlement agreement that the debtor had entered into pre-petition. The motion was opposed on the grounds that the stream of payments was not assignable. The Sparks court began by noting that the structured settlement became part of the bankruptcy estate under § 541(c)(1) when the debtor filed bankruptcy, but was careful to distinguish the transfer of the debtor's interest into the estate from the transfer of that interest proposed by the trustee. Id. at *3. The Sparks court then held that a Chapter 7 trustee has the power to use, sell or lease property of the estate under § 363(b)(1) of the Bankruptcy Code. Id. at *4-*5. HardRock relies on this ruling to argue that it has the same authority, as a debtor in possession, to lease out the Vactor.

Sparks is distinguishable in two respects. First, unlike the case before this Court, it did not involve a motion for relief from the automatic stay. The issue in Sparks was whether a Chapter 7 trustee's motion to approve an assignment should be granted. In the case before this Court, HardRock has not filed a motion for approval to do anything. Instead, the issue before this Court was whether there was cause to lift the stay. Second, the trustee in Sparks sought to assign the estate's rights under the structured settlement agreement under § 365(c)(1) of the Bankruptcy Code. Section 365(c) governs the assumption and assignment of executory contracts and unexpired leases.

-5-

It contains express provisions regarding under what circumstances an executory contract or unexpired lease may be assumed and assigned. As HardRock notes in the Motion and throughout its pleadings in this case, it is the *owner* of the Vactor. There is no executory contract or unexpired lease between HardRock and People's United. <u>Sparks</u> is factually distinguishable and its legal rulings on § 363(b) and § 365(c)(1) are inapplicable to this case.

Fifth, the Motion cites § 1123(a)(5)(B) of the Bankruptcy Code for the proposition that a Chapter 11 plan of reorganization shall provide adequate means for the plan's implementation such as the transfer of all or part of the property of the bankruptcy estate. Again, no argument here. But the Opinion and Order dealt with a motion for relief from the automatic stay of § 362(a), not the contents of a Chapter 11 plan of reorganization under § 1123(a)(5)(B).

Sixth, the Motion argues that under § 363(l) of the Bankruptcy Code, a debtor in possession may use, sell or lease property of the bankruptcy estate "notwithstanding any provision in a contract, a lease or applicable law that is conditioned upon the insolvency or financial condition of the debtor . . . ." Section 363(l) expressly overrides contractual provisions that are conditioned on a debtor's insolvency or financial condition. However, it says nothing about contractual provisions that prohibit a debtor from renting out equipment that serves as the collateral for a secured debt. Section 363(l) is irrelevant to the issue of whether People's United was entitled to relief from the automatic stay for cause.

Seventh, the Motion returns to § 365 and discusses under what circumstances a debtor in possession may assign an executory contract or unexpired lease. Again, HardRock *owns* the Vactor. There is no executory contract or unexpired lease, and § 365 has no application to this case.

-6-

Eighth, the Motion notes that People's United's interest in the Vactor is entitled to adequate protection and then argues that HardRock made an offer of adequate protection. True enough. But People's United's motion requested adequate protection only as an alternative if the Court did not find cause to lift the automatic stay. The Court did find cause to lift the stay and therefore did not need to specifically address in the Opinion and Order HardRock's proposed adequate protection payments in response to People's United's alternative request for relief. However, in the interest of clarity, the Court will elaborate now on HardRock's proposal.

According to HardRock, Miller Pipeline agreed to pay HardRock $11,500.00 per month to rent the Vactor. At the evidentiary hearing, HardRock proposed making adequate protection payments of $1,389.00 per month to People's United. Implicit in the Court's finding that there was cause for relief from the automatic stay is the Court's view that these payments, consisting of a small fraction of the rent that Miller Pipeline agreed to pay, would not adequately protect People's United's interest in the Vactor. One reason is because HardRock's decision to rent out the Vactor to a third party would remove possession of the Vactor from the bankruptcy estate and entrust it to a third party, Miller Pipeline. HardRock presented no evidence as to how and where Miller Pipeline would use the Vactor. HardRock presented no evidence of the financial condition of Miller Pipeline. The only evidence that HardRock provided at all about Miller Pipeline is that Jeffery Patrick, a principal of HardRock, also happens to be its general manager, and the conclusory statement that Miller Pipeline is a subsidiary of a publicly traded company. HardRock did not adduce any evidence to address how People's United would be able to recover the Vactor if HardRock failed to make its adequate protection payments or if Miller Pipeline failed to pay its rent to HardRock. With the Vactor now in the hands of a third party with no contractual relationship to People's United, free to

-7-

17-46425-pjs    Doc 86    Filed 06/29/17    Entered 06/29/17 15:05:40    Page 7 of 10

move and use the Vactor wherever and however it may choose, without providing any information about its financial condition, the Court was not persuaded that HardRock's proposed adequate protection payments for the Vactor would adequately protect People's United's interest in the Vactor. HardRock's argument that it made a proposal for adequate protection payments for the Vactor does not demonstrate a palpable defect in the Court's finding of cause to lift the automatic stay.

Ninth, HardRock objects to the tone of the Court's choice of words in describing HardRock's rental agreement with Miller Pipeline. First, HardRock objects that the Court described HardRock's entry into the rental agreement with Miller Pipeline as "sudden." The evidence showed that the Vactor was in disrepair and had been sitting in a repair shop for six months, not being used by HardRock. The Miller Pipeline rental agreement was signed by HardRock one day before the evidentiary hearing. There was no mention of it before the evidentiary hearing. A copy of it was shown to People's United and the Court for the very first time at the evidentiary hearing. The Court's choice of the word "sudden" was intended only to connote the timing of the rental agreement, but yes, the timing struck the Court as sudden. Second, HardRock objects to the Court's use of the expression "added insult to injury." The Court used that expression to characterize the reaction of People's United, not the Court, upon its learning, for the very first time during Jeffery Patrick's testimony, that Jeffery Patrick had signed a rental agreement with a previously undisclosed company that he happens to manage. People's United expressed surprise upon learning this fact at the hearing, and referred to the relationship between HardRock and Miller Pipeline – both managed by Jeffery Patrick – as "cozy." The Court intended no disrespect to HardRock or Jeffery Patrick by the Court's choice of words in the Opinion and Order. In any event, the Court's choice of words

in describing HardRock's rental agreement with Miller Pipeline do not demonstrate a palpable defect in the Opinion and Order.

Tenth, HardRock argues that it was surprised by the Opinion's discussion regarding whether HardRock's renting out the Vactor was within its ordinary course of business. Although it did not specifically mention renting the Vactor out to Miller Pipeline, it was HardRock, at the June 7, 2017 hearing, that first told the Court that HardRock was intending to rent out equipment because it is in the ordinary course of HardRock's business to do so. That the Court did not passively and unconditionally accept that assertion without questioning whether HardRock's proposed rental of equipment was truly within HardRock's ordinary course of business should not come as a surprise to HardRock. Further, it was HardRock's own witness, Jeffery Patrick, who testified about HardRock's business at the evidentiary hearing. No surprise here, and no palpable defect.

Finally, the Motion describes as a "critical issue" the provision in the Order that waived the 14 day stay of the effect of the Order under Fed. R. Bankr. P. 4001(a)(3). That rule provides that "an order granting a motion for relief from the automatic stay . . . is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise." The rule does not set forth a standard for the Court to determine whether to "order otherwise."

The reason the Court did "order otherwise" in this case – and waive the 14 day stay – was directly due to Jeffery Patrick's testimony. He testified that the rental agreement for the Vactor was made on June 20, 2017, and the rental agreement stated that it was effective on that date. According to Jeffery Patrick's testimony and the rental agreement itself, Miller Pipeline was going to take possession of the Vactor immediately. That's why the Court waived the 14 day provision in Fed. R. Bankr. P. 4001(a)(3). Absent such waiver, Miller Pipeline could have taken possession of the

Vactor and the transfer of possession by HardRock to a third party, who is not a debtor subject to bankruptcy court jurisdiction, would be a fait accompli. The waiver of the 14 day stay of Rule 4001(a)(3) in these circumstances was appropriate.

**Conclusion**

E.D. Mich. LBR 9024-1(a)(2) states that when a motion for reconsideration is filed, no response to the motion nor any argument thereon will be allowed unless the Court so orders. It is unnecessary to require a response to the Motion or to schedule oral argument in this case. At bottom, the Motion disagrees with the Court's finding that there is cause under § 361(d)(1) to lift the automatic stay to permit People's United to enforce its security agreement. That disagreement does not meet the standard for reconsideration under E.D. Mich. LBR 9024-1(a)(3). The Court concludes that the Motion does not demonstrate a palpable defect in the Opinion and Order by which the Court and the parties have been misled and which requires a different disposition of this case. Accordingly,

**IT IS HEREBY ORDERED** that the Motion (ECF No. 85) is denied.

```
Signed on June 29, 2017
                                              /s/ Phillip J. Shefferly
                                           Phillip J. Shefferly
                                           United States Bankruptcy Judge
```